IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>DENNIS B. EVANSON, BRENT H. METCALF, STEPHEN F. PETERSEN, REED H. BARKER, WAYNE F. DEMEESTER and GRAHAM R. TAYLOR,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISQUALIFY COUNSEL**<br><br>Case No. 2:05-CR-805 TC<br><br>District Judge Tena Campbell<br><br>Magistrate Judge David Nuffer |

Under 28 U.S.C. § 636(b)(1)(A) the magistrate judge has been referred a motion[1] to disqualify Max Wheeler, counsel for Dennis B. Evanson.  This order denies the motion.

## Background

The government's investigation of Mr. Evanson's tax savings and deferral strategies began in 2002.[2]  "In early November 2005, the Federal Grand Jury for the District of Utah charged Mr. Evanson with conspiracy (18 U.S.C. § 371), tax evasion (26 U.S.C. § 7201 (multiple counts)), and aiding and assisting the preparation of a false

---

[1] Government's Motion for an Inquiry into Potential Conflict of Interest of Attorney Max Wheeler and His Client Defendant Dennis Evanson (Supporting Memorandum), docket no. 179, filed September 6, 2006.
[2] Defendant Dennis B. Evanson's Memorandum in Opposition to Government's Motion for an Inquiry into Potential Conflict of Interest of Attorney Max Wheeler and His Client Defendant Dennis Evanson (Opposition Memorandum) at 4, docket no. 197, filed September 18, 2006.

income tax return (26 U.S.C. § 7206(2) (multiple counts))."[3]  Co-defendants were also indicted.

The government points to three instances in which it says Mr. Wheeler may be a witness – called by any party – or an "unsworn witness."[4]  By the latter term, the government means that Mr. Wheeler's service as trial counsel may impliedly represent factual information because some actions he took as counsel for Mr. Evanson may be material proof at trial.

The three circumstances of Wheeler's alleged involvement are:

- An exchange of letters in 2004 – 2005 between an attorney for some of Evanson's clients and Evanson.[5]

- A letter sent by Evanson and an attorney co-defendant to various clients in early 2006.[6]

- An e-mail from Evanson to a client on February 2, 2006.[7]

The factual details of these communications and the alleged role of Wheeler are important to the court's decision on this motion; thus, these details will be reviewed.

## 2005 Letters

Certain clients of Evanson attempted to obtain funds from Evanson in early 2005.[8]  They contacted an attorney, who called Wheeler on February 25, 2005.  The

---

[3] *Id.* at 4-5.
[4] Supporting Memorandum at 11.
[5] *Id.* at 5.
[6] *Id.* at 3.
[7] *Id.* at 6.
[8] *Id.* at 5.

clients' attorney then sent a letter to Wheeler on February 28, 2005.[9]  Wheeler passed the

letter on to Evanson,[10] and the clients received a letter from Evanson dated May 13,

2005.[11]  The letter opens with a disclosure that Wheeler and Evanson had reviewed the

matter:

> My counsel, Mr. Max Wheeler, has received requests from your attorney
> that certain property be quitclaimed to you in your efforts to close out any
> interest you may have in International Capital Group, Inc. We have
> reviewed the matter, and he suggested I confer with you directly on the
> issue.[12]

This paragraph also states Wheeler suggested Evanson confer directly with the clients.

The government claims this "letter directly contradicts what they had previously

been told by Evanson."[13]  Thus, the government says, the letter is evidence of

"obstructive acts committed by Evanson."[14]  "Prior to his knowledge of the investigation

that was being conducted by the Internal Revenue Service, Dennis Evanson interacted

with his clients in certain ways.  After becoming aware of the investigation he changed

his behavior with regard to his clients."[15]  Under the government's theory, Evanson's

conduct – when inconsistent with its theory of the case – demonstrates that his

"involvement in the [alleged] tax evasion scheme [was] willful."[16]  This is because the

---

[9] *Id.*  The letter is attached to the Opposition Memorandum as Exhibit C.
[10] Opposition Memorandum at 7.
[11] This letter is attached to the Opposition Memorandum as Exhibit D.
[12] Quoted in the Supporting Memorandum at 5.
[13] Supporting Memorandum at 5.
[14] *Id.* at 5.
[15] Government's Reply to Defendant's Response to Motion for an Inquiry into Potential Conflict of Interest of Attorney Max Wheeler and His Client Defendant Dennis Evanson (Reply Memorandum) at 2, docket no. 197, filed September 22, 2006.
[16] *Id.* at 4.

government claims that "any conduct, the likely effect of which would be to mislead or conceal" shows willfulness.[17]

The government claims Evanson's letter "was *discussed* with and *approved* by Mr. Wheeler."[18]  The letter, however, only states that they *reviewed* the matter and that Wheeler *suggested* that Evanson confer directly with the clients.  The government claims that Evanson's "letter directly contradicts what [the clients] had previously been told by Evanson."[19]

The government claims that "Wheeler will be a necessary witness" because his "advice to Evanson [about the letter] will be a material fact in the present criminal trial" and that Wheeler "possesses first-hand knowledge of Evanson's knowledge and intent prior to sending out the letter." [20]

### Early 2006 Client Letters

Around March 6, 2006,[21] Evanson and co-defendant Metcalf sent out letters to clients.[22]  The government claims "these letters directly contradicted all statements made by Evanson to clients prior to the Defendants' knowledge of the IRS investigation."[23] The government also claims the letters were "threatening"[24] and "coercive,"[25] and constitute "an act of obstruction."[26]  "The government will argues [sic] that these letters

---

[17] *Id.* (quoting *Spies v. United States*, 317 U.S. 492, 499 (1943)).  *See also* Reply Memorandum at 6.
[18] Supporting Memorandum at 6.
[19] *Id.* at 5.
[20] *Id.* at 6.
[21] Opposition Memorandum at 7.
[22] A sample letter is attached to Exhibit E, attached to the Opposition Memorandum.
[23] Supporting Memorandum at 3.
[24] *Id.*
[25] *Id.* at 4.
[26] Opposition Memorandum at 8.

constitute witness tampering."[27]   Apparently, during a conversation in settlement

negotiations that same month, counsel for Metcalf told the government that Wheeler

approved the letter before it was sent.[28]   Wheeler claims Metcalf's counsel made this

assertion when the government "threatened to terminate settlement discussions, to

supersede the Indictment or to file separate charges, and to revoke bail and place Mr.

Metcalf in custody."[29]

### February 2, 2006 E-mail

An e-mail Evanson sent a client on February 2, 2006, was copied to Wheeler.

The government claims that Wheeler knew – and perhaps approved – of the e-mail,

which the government claims is obstructive conduct by Evanson.[30]   The e-mail

essentially quotes the indictment in this case and states Evanson's conclusion that the

quotation "states, at least in part, the position taken by the government . . . .   It seems this

position is consistent with our assertions over the years and may provide at least some

level of comfort to those involved."[31]

### Discussion

The Sixth Amendment of the United States Constitution guarantees the right of an

accused to "have the Assistance of Counsel for his defense."[32]   There is a companion

right to "choose one's own counsel"[33] which also implicates the right to decide *what type*

---

[27] Reply Memorandum at 5.
[28] Supporting Memorandum at 4.  *See also* Opposition Memorandum at 8-9.
[29] Opposition Memorandum at 8.
[30] Supporting Memorandum at 6-7.
[31] Opposition Memorandum at 5-6. The e-mail is attached to the Opposition Memorandum as Exhibit A.
[32] U.S. Const. Amend. VI.
[33] *Wheat v. United States*, 486 U.S. 153 (1988).

*of defense* the accused will present.[34]  It has been said that "the most important decision a

defendant makes in shaping his defense is his selection of an attorney."[35]  Anyone

experienced in criminal proceedings or civil litigation would have to agree.

Nonetheless, the accused must have the assistance of counsel who is unhindered

by conflicting interests.[36]  So, "where the defendant's "preferred attorney has been

implicated in the crime" or "when the attorney [is] scheduled to be called as a witness,"

disqualification of the attorney is proper.[37]

### Standards for Disqualification

Most of the criminal cases which find a need to disqualify counsel do so on the

basis of impermissible multiple party representation, either in the pending case or in

successive cases.  In multiple representation cases, a conflict is not subject to waiver

because a knowing, intelligent, and voluntary waiver is hard to achieve.  In addition, a

court is not required to accept a waiver because the court itself has an interest in

unimpaired counsel.

These factors are well illustrated in *Wheat v. United States*.[38]  Two defendants

were charged in a drug conspiracy, but were to be tried separately.  The attorney

representing one defendant sought to appear to represent the other.  The trial court,

troubled by the attorney's inability to effectively cross examine one client testifying in

---

[34] *United States v. Nichols*, 841 F.2d 1485, 1502 (10th Cir. 1988).
[35] *United States v. Laura*, 607 F.2d 52, 56 (3rd Cir. 1979)
[36] *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978).
[37] *Nichols*, 841 F.2d at 1502.
[38] 486 U.S. 153, 159 (1988).

the trial of his other client,[39] denied the attorney's request to appear.  "The Court of
Appeals found that the District Court had correctly balanced two Sixth Amendment
rights:  (1) the qualified right to be represented by counsel of one's choice, and (2) the
right to a defense conducted by an attorney who is free of conflicts of interest."[40]  The
Supreme Court affirmed, recognizing "that multiple representation of criminal defendants
engenders special dangers."[41]  The Supreme Court also noted the ineffectiveness of
waivers of conflicts, because of "the apparent willingness of Courts of Appeals to
entertain ineffective-assistance claims from defendants who have specifically waived the
right to conflict-free counsel."[42]  Finally, the Supreme Court acknowledged concerns for
"the integrity of the court [and] the independent interest of the trial judge to be free from
future attacks over . . . the fairness of the proceedings in his own court . . . ."[43]

   The same method of balancing the right to counsel of choice against ethical
constraints was employed in *United States v. Nichols*.[44]  The case determined that an
order restraining assets subject to a forfeiture claim did not violate the right to counsel of
choice.  In dicta, *Nichols* cited conflicts of interest and attorney involvement in charged
criminal activity as instances in which the right to counsel might be overridden.[45]

   Counsel was also barred from appearing in *United States v. Locascio*.[46]  Excluded
counsel was taped in several conversations in which illegal activity was discussed; had

---

[39] *Id. at* 156.
[40] *Id.* at 157.
[41] *Id.* at 159.
[42] *Id.* at 162.
[43] *Id.* 162
[44] 841 F.2d 1485 (10th Cir. 1988).
[45] *Id.* at 1503.
[46] 6 F.3d 924 (2nd Cir 1993).

received money "under the table" which made him a potential accomplice in the alleged tax fraud; and had served as "house counsel for the Gambino Crime Family."[47]  The appellate court found that counsel's participation in the phone conversations would make him an "unsworn witness" as he would inevitably explain his own conduct and interpret the defendant's conversations on the tapes.  The appellate court also affirmed the denial of counsel of choice because counsel's retained status for the Gambino Crime Family divided his interests from those of the defendant.[48]

The government also relies heavily on *United States v. Defazio*.[49]  The defendant had retained counsel to assist him with filing a bankruptcy petition.  Counsel also appeared with the defendant at creditors meetings where the defendant was examined under oath.  The defendant was later indicted on charges of bankruptcy fraud and tax evasion.  When a motion to disqualify was filed, the defendant did not dispute the fact that the attorney "participated in essential contested events and is likely to be a material witness . . . ."[50]  It was also possible that an advice of counsel defense might be raised.  The court disqualified the bankruptcy attorney from serving as defense counsel in the criminal case.[51]

---

[47] *Id.* at 932.
[48] *Id.* at 932-33.
[49] 899 F.2d 626 (7th Cir. 1990)
[50] *Id.* at 630.
[51] *Id.* at 632.

**Standard – Likely to Be a Witness**

The rule prohibiting a trial attorney from serving as a witness is found in the Utah

Rules of Professional Conduct as adopted by the District of Utah Local Rules.[52]

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be
> a necessary witness unless:
>> (a)(1) the testimony relates to an uncontested issue;
>> (a)(2) the testimony relates to the nature and value of legal services
>> rendered in the case; or
>> (a)(3) disqualification of the lawyer would work substantial hardship on
>> the client.[53]

The likelihood of service as a necessary witness excluded counsel in *Defazio*.

An attorney becomes an "unsworn witness" when his relationship to his client

results in his having first-hand knowledge of the events presented at trial.[54]  This is

nearly the equivalent of saying the attorney was involved in the charged activity, as was

the case in *Defazio* and *Locascio*.

**Alleged Bases for Disqualification**

The government appears to be claiming both that Wheeler is a necessary witness

and that he is a participant in Evanson's alleged wrongdoing because:

- Wheeler "reviewed" the letter of February 2005 and "suggested" Evanson
  respond directly to it;
- Metcalf's counsel asserted that Wheeler "approved" the March 2006
  letter; and
- Wheeler received a copy of the February 2006 e-mail.

The government asserts that Wheeler is a necessary witness to these events *and* to the

intent and purpose of Evanson in sending the communications.

---

[52] DUCivR 83-1.1(h).

[53] Rule 3.7, Utah Rules of Professional Conduct.

[54] *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993).

It appears that Mr. Wheeler has first hand knowledge of certain acts taken by the defendants both before and after the indictment that had the purpose and effect of obstructing the investigation and influencing witness testimony.  Mr. Wheeler's involvement – whether real or fabricated by Evanson – in the defendants' obstructive acts creates the necessity for Mr. Wheeler to be a trial witness in this case.  Consequently, the conflict is neither a remote risk nor inconsequential enough to be waived.  Therefore, the appropriate remedy is disqualification of Mr. Wheeler.[55]

### Wheeler as a Participant

No one alleges that Wheeler was a participant in the charged activity.  Instead, the government alleges that Wheeler was referred to in what the government claims was an effort inconsistent with the charged activity.  The government claims that there was a change of tune that is "obstruction."  It would be troubling if the government could disqualify counsel for knowing of or advising toward remedial or compliant conduct. The court is not persuaded that Wheeler is a participant in any relevant activity to the degree that would justify interference with Evanson's choice of counsel.

### Wheeler as a Witness

The government's claim that Wheeler is likely to be a necessary witness is subject to serious doubt.  The areas of his alleged knowledge are tangential and speculative and the attorney-client privilege will bar much of the proposed inquiry;

### Centrality of the Evidence

Based on the documentary evidence before the court, the best that can be said is that Wheeler may have passed the February 2005 letter on to Evanson for him to answer directly; that Wheeler received a copy of the February 2006 e-mail; and that Wheeler is

---

[55] Supporting Memorandum at 12.

*said* to have advised Evanson about the March 2006 letter.  These events all occurred after the alleged wrongdoing in the indictment.  For the same reason that Wheeler's testimony would not be necessary, these documents themselves are not central to the case.  The documents themselves are evidence, which makes any need for Wheeler's testimony about them or their intent or development speculative and remote.

### Attorney Client Privilege

The government's reliance on Wheeler's value as a witness presumes that the government can invade the attorney client privilege.  The government asserts the privilege is waived as to Wheeler's involvement in the communications.  "Having told third parties that he was acting on advice of counsel, and in the case of the 1099 letters with the blessing of counsel, Evanson has waived the privilege."[56]  The government relies on inapplicable language from *United States v. Ryans*,[57] a Tenth Circuit opinion. *Ryans* states:  "The attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party."[58]  The quoted language does not apply in this case because there has been no disclosure of the *substance* of any privileged communication; at most there is only a disclosure of the *fact* of the communication.

In *Ryans*, the Tenth Circuit reviewed the decision of a district court suppressing tapes of conversations in which the defendant discussed the *substance* of legal advice with an informant.  The trial court suppressed the tapes because it found the government had violated an ethical rule against a lawyer communicating "on the subject of the

---

[56] Supporting Memorandum at 12.
[57] *United States v. Ryans*, 903 F.2d 731 (10th Cir. 1990).
[58] *Id.* at 741 n.13.

representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."[59]   The Tenth Circuit reversed, holding that the ethical rule did not apply to bar the tape evidence.  *Ryan* also states incidentally -- in a footnote -- that there was no privilege issue.  Privilege as to the taped conversations was lost because in two conversations the defendant not only discussed "the need for legal representation;"[60] the *fact* of legal representation;[61] and "that he had met with and had obtained advice from his lawyer"[62] but also "disclosed the substance of that advice."[63]   It was the disclosure of the *substance* of the legal advice that triggered the privilege waiver.  Disclosure of the fact of consultation does not work a waiver.

Here, Evanson's February 2006 e-mail was copied to his attorney.  There is no waiver of discussions related to the e-mail.  Evanson's May 2005 letter said "the matter" was reviewed with Wheeler.  Again, no substance of those discussions is revealed. Finally, the March 2006 letter makes no disclosure of Wheeler's involvement.  The government has heard through another witness that Wheeler had some involvement, but again, there is no indication that the substance of any discussions was revealed.

The presence of the privilege casts even more doubt on the "necessity" of Wheeler's testimony.  The fact of his participation – to the extent he did participate – can

---

[59] *Ryans,* 903 F.2d. at 735 (quoting Model Code of Professional Responsibility DR 7-104(A)(1)(now Rules of Professional Conduct 4.2(a)).
[60] *Ryans*, 903 F.2d at 733.
[61] *Id.*
[62] *Id.*
[63] *Id.* at 734.

be known without his testimony and little more than that will be available by reason of the privilege.

### Interest of Justice

The government's motion has serious implications on the interests of justice.  If counsel who assist clients in investigative stages are to be disqualified in trial stages, defendants will be substantially restricted in their choice of counsel.  Those being investigated will be substantially restrained in their ability to consult counsel in investigative stages if such counsel are subject to being called as witnesses.  A person under investigation will be restricted in resolving the legal implications of on-going business activities.  These infringements on the activities of counsel and the client's right to choose are serious.

### ORDER

IT IS HEREBY ORDERED that the motion[64] to disqualify counsel is DENIED.

Dated this 18th day of  October, 2006.

BY THE COURT

David Nuffer
United States Magistrate Judge

---

[64] Government's Motion for an Inquiry into Potential Conflict of Interest of Attorney Max Wheeler and His Client Defendant Dennis Evanson, docket no. 179, filed September 6, 2006.