IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>DENNIS B. EVANSON, BRENT H. METCALF, STEPHEN F. PETERSEN, REED H. BARKER, WAYNE F. DEMEESTER and GRAHAM R. TAYLOR,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR DISCOVERY**<br><br>Case No. 2:05-CR-805 TC<br><br><br>District Judge Tena Campbell<br><br><br>Magistrate Judge David Nuffer |

Under 28 U.S.C. § 636(b)(1)(A) the magistrate judge has been referred a motion[1] for discovery of a Suspicious Activity Report (SAR) mentioned in an affidavit supporting a search warrant at issue in this case.  This order grants the motion.

### Factual Background

Defendant Evanson has filed a motion to suppress alleging that "the Affiant provided materially false information to the Magistrate [Judge] in the Application and Affidavit."[2] Evanson's suppression motion also claims that the warrant was (by lack of specificity) a general warrant and executed in a manner that was a "general exploratory rummaging."[3]  He further claims that a second warrant, based on the first warrant, is "fruit of the poisonous tree."[4]  Thus, the validity of the first warrant is a critical issue in this case.

---

[1] .Defendant Dennis B. Evanson's Rule 16 Motion for Discovery, docket no. 232, filed December 13, 2006.

[2] Memorandum in Support of Defendant Dennis B. Evanson's Motion to Suppress Evidence Seized Pursuant to Two Search Warrants (Suppression Memorandum) at 3, docket no. 145, filed August 28, 2006.

[3] *Id.* at 2-3.

[4] *Id.* at 3.

The Application and Affidavit[5] at issue includes the following statement:

A Suspicious Activity Report was obtained on September 25, 2002 from Wells Fargo Bank which outlines a series of transactions that occurred within a three day period, all within Wells Fargo bank accounts.  A known partner of OMEGA FOREX wired $200,000 to OMEGA FOREX's account.  These same funds were transferred to COTTONWOOD FINANCIAL SERVICES' account within one day, and were one day later transferred into an account controlled by the same partner who had originally paid the funds.[6]

Evanson claims he "has reason to believe that the Affiant made . . . materially false representations and omissions with respect to the SAR.  In light of the government's reliance on the SAR, Evanson should at least be given an opportunity to review the document . . . ."[7]

### Suspicious Activity Reports

A Suspicious Activity Report is a document the Secretary of the Treasury requires a certain money-handling businesses to file if the business detects "a known or suspected violation of federal law, a suspected transaction related to money laundering activity, or a violation of the Bank Secrecy Act."[8]  The business making the report is prohibited from notifying "any person involved in the transaction that the transaction has been reported;"[9] is granted blanket immunity from any adverse action of a person affected  by disclosure of the transaction or non-disclosure of the report;[10] and is directed by regulations, even in the face of a subpoena, to "decline to produce the SAR or to provide any information that would disclose that a SAR has been

---

[5] The Application and Affidavit is Exhibit 1 to the Suppression Memorandum, docket no. 145.  The Suppression Memorandum itself was amended and re-filed without exhibits as docket no. 168 on August 29, 2006.

[6] Application and Affidavit for Search Warrant at ¶ 19.

[7] Memorandum in Support of Dennis B. Evanson's Rule 16 Motion for Discovery at 3-4, docket no. 233, filed December 13, 2006.

[8] 12 C.F.R. § 21.11(a).

[9] 31 C.F.R. § 103.18(e).  *See also* 31 U.S.C. § 5318(g)(2)(A)(i).

[10] 31 U.S.C. § 5318(g)(3)(A).  *See also* 12 C.F.R. § 21.11(l).

prepared or filed . . . ."[11]  The reporting business is thus protected from liability and involvement in disputes that might arise from the information contained in the SAR.

It is worth noting that the *statute* requires confidential treatment for the fact that a report was made, but the *regulations* go further to make the physical SAR document confidential.  The additional reach of the regulations has been recognized and affirmed by courts.  "Since the production of SARs by a bank in response to a subpoena would invariably increase the likelihood that the 'person involved in the transaction' would discover or be notified that the SARs had been filed, . . . the regulation [making SARs confidential] is consistent with and in harmony with the statute."[12]

> The government is also generally prohibited from disclosing that a report was made:
>
> [N]o officer or employee of the Federal Government or of any State, local, tribal, or territorial government within the United States, who has any knowledge that such report was made may disclose to any person involved in the transaction that the transaction has been reported, other than as necessary to fulfill the official duties of such officer or employee.[13]

The innocent financial institution which is involuntarily required to be a reporting agency is thus protected from being identified by the government.

---

[11] 12 C.F.R. § 21.11(k).  A regulation at 31 C.F.R. § 103.18(e) contains an exception permitting disclosure to "FinCEN or an appropriate law enforcement or bank supervisory agency . . . ."  FinCEN is the "Financial Crimes Enforcement Network of the Department of the Treasury."  12 C.F.R. § 21.11(b).

[12] *Weil v. Long Island Sav. Bank*, 195 F.Supp.2d 383, 388 (E.D.N.Y. 2001)(citations and quotations omitted).  "The regulation is thus broader in its prohibition against disclosure of the existence or content of an SAR than is the statute, although it has been held consistent with the statute."  *U.S. v. Holihan*, 248 F.Supp.2d 179, 186 (W.D.N.Y. 2003).  "The Rule has been found to be consistent with the statute."  *Gregory v. Bank One Corp. Inc.*, 200 F.Supp.2d 1000, 1002 (S.D. Ind. 2002).

[13] 31 U.S.C.A. § 5318.

## Confidentiality of SARS

There is language in some cases making it appear that SARs are absolutely privileged from disclosure outside the financial agency and regulatory agency.  "The court finds that, pursuant to the plain language of the regulation, the confidentiality privilege set forth in 12 C.F.R. § 563.180(d)(12) is not qualified."[14]  "Thus, not only the plain language of the statute but also sound public policy dictated that anything contained in an SAR enjoy [sic] an unqualified privilege."[15]  "There is no provision in the Act or the Rule allowing a court-order exception to the unqualified privilege.[16]  However, this broad language comes from civil cases where disclosure was sought from a financial institution.  None of these cases scrutinized the confidentiality requirement in light of the unique, substantial and constitutional rights of criminal defendants.  The one criminal case to expressly consider SAR confidentiality only considered a request for production of "Suspicious Activity Reports ("SARs") filed against any other Bank employee" besides the defendant.[17]  In that case, the defendant was hoping to defend himself by finding evidence of other employees' wrongful activity.  There was no evidence that such SARs existed.  But the bank was required to produce all documentation supporting any wrongful activity by other employees.

Close examination of the statutory and regulatory provisions shows that restrictions on access to SARs are specific and not absolute.  12 C.F.R. § 21.11(k) only applies to a "national

---

[14] *Weil*, 195 F.Supp.2d at 389.
[15] *Nevin v. Citibank, N.A.*, 107 F.Supp.2d 333, 342 (S.D.N.Y. 2000).
[16] *Gregory,* 200 F.Supp.2d at 1003.  This case even concluded that *in camera* review of the SAR was improper.
[17] *Holihan*, 248 F.Supp.2d at 185.

bank or person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR."[18]  A court order is not mentioned.

Further, this court is not convinced that the use of the word "person" means to embrace all persons.  It seems to apply just to those persons related to the reporting financial institution.  The rest of regulation § 21.11 speaks entirely of financial institutions.  The regulation only uses the word "person" in the confidentiality subsection.  The individuals identified elsewhere in the regulation are financial institution "directors, officers, employees, agents, or other institution-affiliated parties.[19]  It would appear these are the "persons" to whom the confidentiality restriction applies.

The separate regulation on confidentiality specifically applicable to national banks appears similarly limited to financial institutions and *persons related to them*.  That regulation requires that "any person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR . . . shall decline to produce the SAR."[20]  (Again, this regulation only applies to subpoenas or other *requests* and does not mention orders.)  Its use of the word "person" is similar to § 21.11.  This confidentiality requirement is contained in a paragraph also containing the "no notification" requirement which applies to a "bank or other financial institution, and . . . director, officer, employee, or agent of any bank or other financial

---

[18] The same "subpoenad or requested" language appears in similar regulations governing other businesses, but the regulation governing mutual funds uses the words "subpoenad or otherwise *required*."  13 C.F.R. § 103.15(d) (emphasis added).  The regulations for other businesses are at 13 C.F.R. § 103.17(e) (futures brokers); 13 C.F.R. § 103.19(e) (securities brokers); 13 C.F.R. § 103.20(d) (money services businesses); and 13 C.F.R. § 103.21(d) (casinos).

[19] 12 C.F.R. § 21.11(i).

[20] 31 C.F.R. § 103.18(e).

institution."[21]  Thus, it again appears that the "persons" bound by the confidentiality requirement are those same persons bound by the "no notification" restriction.  The linkage between the "no notification" requirement and confidentiality requirement is also shown by the word "thus" appearing between the two sentences, implying that the second sentence is predicated on the first:

> No bank or other financial institution, and no director, officer, employee, or agent of any bank or other financial institution, who reports a suspicious transaction under this part, may notify any person involved in the transaction that the transaction has been reported.  *Thus*, any person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR . . . shall decline to produce the SAR.[22]

This same paragraph structure appears in similar regulations governing other industries.[23]

Persons related to financial institutions must be bound by a duty of confidentiality because the institution is specifically *directed* to disclose SARs to them.  "Whenever a national bank files a SAR pursuant to this section, the management of the bank shall promptly notify its board of directors, or a committee of directors or executive officers designated by the board of directors to receive notice."[24]  The *requirement* of internal disclosure gives rise to the need to bind these persons to confidentiality.

Beyond recognizing that many people in a financial institution may have access to SARs, the regulatory scheme also contemplates broad dispersal of SARs for law enforcement purposes.  "National banks are *encouraged* to file a copy of the SAR with state and local law enforcement

---

[21] *Id.*
[22] *Id.* (emphasis added).
[23] *See* regulations cited, *supra,* n.18.
[24] 12 C.F.R. § 21.11(h)(1).

agencies where appropriate."[25]   A financial institution may freely respond to SAR related

subpoenas or requests coming from "an appropriate law enforcement or bank supervisory

agency."[26]   Any government personnel with knowledge of a report "may disclose to any person

involved in the transaction that the transaction has been reported . . . as necessary to fulfill the

official duties of such officer or employee."[27]   This last provision recognizes that legitimate law

enforcement purpose may override the reasons for confidentiality.

 The history of the confidentiality regulation applicable to savings and loans shows that

they were intended to keep SARs out of *civil* litigation.

  The OTS was encouraged to adopt regulations that would make SARs
  undiscoverable in civil litigation, in order to avoid situations in which a savings
  association or service corporation could be ordered by a court to produce a SAR
  in civil litigation and could be confronted with the prospect of having to choose
  between being found in contempt or violating the OTS's rules. In the opinion of
  the OTS, 31 U.S.C. 5318(g) precludes the disclosure of SARs in discovery.[28]

The use of the word "request" in the confidentiality provisions is consistent with the intent to

block civil litigation discovery requests.

 Beyond use in law enforcement and internally in financial institutions, SARs have been

found not exempt from production under the Freedom of Information Act.[29]   And the

information contained in SARs has never been protected from disclosure.[30]

 The court cannot see a legal bar to the disclosure of the SAR to Defendant.  The

confidentiality regulations apply to persons in financial institutions and to the institutions.

---

[25] 12 C.F.R. § 21.11(e)(emphasis added).
[26] 31 C.F.R. § 103.18(e).
[27] 31 U.S.C. § 5318(g)(2)(A)(ii).
[28] Operations-Suspicious Activity Reports and Other Reports and Statements, 61 Fed. Reg. 6100, 6104 (Feb. 16, 1996).
[29] *Dupre v. F.B.I.*, No. Civ. A. 01-2431, 2002 WL 1042073, 1 (E.D. La. May 22, 2002)
[30] *Weil*, 195 F.Supp.2d at 389; *Holihan*, 248 F.Supp.2d at 187.

Government employees are permitted to disclose SARs in performing their official duties.  One of the duties of a prosecutor is to respond to discovery requests for material evidence.  A judge's duty is to order such production when appropriate.  The Defendant already knows that a SAR was prepared, because that fact has been disclosed – by the affiant.

### The SAR Should Be Produced

The affidavit in support of the warrant represented that specific facts were outlined in a SAR prepared by a bank.  Thus, the affidavit relies in some measure on the credibility of the independent report by the financial institution.  The affidavit states the SAR "outlines a series of transactions" and then discusses the transactions.

The government argues "[t]he Defendant does not need the SAR in order to establish whether or not [the affiant's] description of the transactions was accurate.  The bank records reflecting the transactions . . . would suffice for that purpose."[31]  But the Defendant does need the SAR to know whether the *characterization of the SAR* was accurate.

To some extent, the government created the need for disclosure by relying on the SAR in the affidavit, rather than relying on the underlying facts.  The government made the SAR "material to preparing the defense."[32]

The government relies on several policies favoring confidentiality of SARs:

- disclosure of the contents of a SAR may inadvertently disclose methods by which institutions and law enforcement learn of suspicious and otherwise illegal activity and therefore might allow other wrongdoers to avoid these methods of detection;
- financial institutions file SARs with the expectation that they will be kept confidential; and

---

[31] Memorandum in Opposition to Defendant Dennis B. Evanson's Rule 16 Motion for Discovery at 3, docket no. 238, filed December 26, 2006.
[32] Fed R. Crim. P. 16(a)(1)(E).

- disclosure of SARs will tend to have a chilling effect on both the quantity and quality of future SAR filings.[33]

The court has reviewed the SAR *in camera* and does not find that it will reveal law enforcement methodology.[34]  The disclosure under seal of the SAR to defense counsel will not further aggravate the financial institution's expectation of confidentiality.  The bank remains protected by the regulatory and statutory immunities.  The statute and regulation requiring SAR reports and providing penalties for non-reporting will overcome any chilling effect from the limited disclosure of this SAR.  Because the government has made the SAR material, it is impossible to withhold it from the Defendant in this criminal case.

## ORDER

IT IS HEREBY ORDERED that the motion[35] is GRANTED.  The government shall deliver the SAR under seal to counsel for Defendant Evanson, who may discuss and review it with his client.  Counsel for Evanson may use the SAR in filings and proceedings in this case, but the SAR and quotations from it shall, unless otherwise ordered, be filed under seal and accessible only to the court, government and counsel for Evanson.

Dated this 12th day of  January, 2007.

BY THE COURT

David Nuffer
United States Magistrate Judge

---

[33] *Id.* at 4.
[34] The submitted SAR is filed under seal.  See docket no. 246, filed January 12, 2007.
[35] Docket no. 232, filed December 13, 2006.